IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,423

In the Matter of BRIAN R. JOHNSON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed October 10, 2014. Indefinite suspension.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Brian R. Johnson*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Brian R. Johnson, of Topeka, an attorney admitted to the practice of law in Kansas in 1988.

On August 15, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent untimely filed an answer on September 25, 2013. On September 25, 2013 and September 29, 2013, the parties signed a written stipulation of facts. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on October 1, 2013, where the respondent was personally present. The hearing panel determined that respondent violated KRPC 1.2(a) (2013 Kan. Ct. R. Annot. 459) (scope of representation); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 8.4(c) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct involving misrepresentation);

1

8.4(d) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 211(b) (2013 Kan. Ct. R. Annot. 356) (failure to file answer in disciplinary proceeding); and Kansas Supreme Court Rule 218(a) (2013 Kan. Ct. R. Annot. 406) (notification of clients upon suspension).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     On May 18, 2012, the Kansas Supreme Court suspended the respondent's license to practice law in the State of Kansas for one year. The Court required that before reinstatement, the respondent comply with Kan. Sup. Ct. R. 218 and undergo a hearing pursuant to Kan. Sup. Ct. R. 219.

"9.     At the time the Court ordered the respondent to comply with Rule 218, that rule provided, in pertinent part, as follows:

'(a)     In the event any attorney licensed to practice law in Kansas shall hereafter be . . . suspended from the practice of law pursuant to these Rules, . . . such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.' [2012 Kan. Ct. R. Annot. 397.]

2

"10.     Following the respondent's suspension from the practice of law, on June 4, 2012, he provided *Pro Tem* Judge James T. George with a cover letter and packet of information regarding cases for which he was appointed counsel in Douglas County, Kansas. In the cover letter, the respondent informed Judge George that he was 'prohibited from practicing law for the present time' and he requested that the judge appoint another attorney to represent his clients. The packet of information included police reports, driving records, citations, and a handwritten note regarding a possible plea. Judge George was not the presiding judge in all of the cases included in the packet.

"11.     The respondent did not provide any notice to his clients. The respondent did not provide notice to each judge presiding over the cases. The respondent did not provide notice to opposing counsel. Finally, the respondent did not file any motions to withdraw from the representations.

"12.     Specifically, the respondent had been appointed to represent M.G. in a criminal case before Judge Peggy C. Kittel. The respondent failed to notify M.G. that he was suspended and could no longer represent M.G. On July 6, 2012, M.G. appeared in court for sentencing and expected the respondent to appear. Prior to the hearing, M.G. had attempted to contact the respondent but was unable to do so.

"13.     Judge Kittel informed M.G. that the respondent had been suspended from the practice of law and could no longer represent him. Judge Kittel appointed M.G. a new attorney and continued the sentencing hearing.

"14.     On July 26, 2012, Judge Kittel forwarded a complaint to the disciplinary administrator's office regarding the respondent's failure to comply with Sup. Ct. R. 218. The disciplinary administrator provided the respondent with a copy of the complaint and directed the respondent to provide a written response within 20 days. The respondent failed to provide a written response as directed.

"15.     Eventually, on November 26, 2012, the respondent provided a written response to Judge Kittel's letter. In the letter, the respondent stated:

'On June 4, 2012, I forwarded correspondence to the Douglas County Pro Tem with material associated with all of my Court appointed cases. I further notified the Pro tem [*sic*] of my prohibition from practicing law and requested him to reassign my cases.

'Due to the press of time with the case schedules of the clients, I believed it more prudent to notify the Court immediately. Sending correspondence to the clients, unaware if it would reach them due to a lack of forwarding address or unstable living arrangements, seemed at that time to be ineffectual. Moreover, sending correspondence to the clients, knowing that they may not have the where withal [*sic*] to take the steps to secure counsel through the court, it seem [*sic*] at the time may prove to be effectual. Unfortunately one client, identified in my correspondence with the Pro Tem, fell through at no fault of the court.

'Finally, while the Judge correctly points to the fact that I did not file a formal withdrawal, I did in fact notify the Pro tem [*sic*] of my prohibition from practicing law and requested him to reassign my cases. The Pro Tem reviewed my correspondence and took the appropriate action concerning my future representation of the clients.

'In conclusion, I have forwarded correspondence on November 12th to Attorney Shaye L. Downing concerning the other inquiry. I stand ready to answer any other inquiry the office may have.'

"16.     On December 17, 2012, the respondent wrote to the investigator, using Johnson Law Office letterhead. In that letter, the respondent stated:

'I have reviewed your response to my correspondence concerning the above referenced matter. To be clear, my response was not to

4

convince you that I complied with the rule. As is required by all attorneys, when ordered to respond to a complaint, I just attempted to honestly comport [*sic*] the facts.

'If your review of the facts establishes that I violated a rule I will accept it. All I can say is that I did not have the addresses of my clients. Those that I had were not reliable. I was appointed to all the case [*sic*] by the Pro Tem. As such, I deemed the most expedient was [*sic*] to attain counsel for the clients was to contact the Pro Tem. I [*sic*] spite of the foregoing, it would appear the Rule was not satisfied.

'To be clear, my response is not written to absolve myself of any rule violation. My response is to give you a factual narrative of my conduct. Thank you for your patience and fairness I [*sic*] how you conducted this investigation. Please fill [*sic*] free to contact me to discuss this matter further.'

"DA11648

"17.    B.R. retained the respondent to file a breach of contract and conversion suit against Haase & Long, Inc., a medical billing company. On May 9, 2011, the respondent filed suit. Later, Haase & Long, Inc. answered and filed a counterclaim against B.R. Judge Robert Fairchild, Douglas County District Court, presided over the suit.

"18.    During the litigation, the parties agreed that an expert witness would be necessary to support the claim. The respondent named an expert witness, Jeff McDonald. However, Mr. McDonald informed the respondent that he could not serve as an expert witness as he did not feel qualified to do so. Mr. McDonald agreed to assist the respondent by reviewing documents. After he completed his review of the documents that the respondent provided to him, Mr. McDonald informed the respondent that it was necessary to review specific additional documents. The respondent failed to take any action to obtain the documents which Mr. McDonald indicated were necessary to review.

5

"19.     The respondent failed to comply with discovery requests. Haase & Long, Inc. filed a motion to compel the respondent comply with discovery requests. The Court ordered the respondent to provide a response by March 2, 2012. The respondent did not provide a response as ordered by the Court.

"20.     On March 9, 2012, Haase & Long, Inc. filed a motion for sanctions for failure to properly designate an expert witness and to complete discovery responses. The Court scheduled a hearing on the motion for sanctions for April 2, 2012.

"21.     Immediately before the April 2, 2012, hearing, the respondent filed a motion to dismiss the breach of contract case without prejudice. Haase & Long, Inc. moved the court for a dismissal with prejudice. The Court granted Haase & Long's motion and dismissed the breach of contract claim with prejudice.

"22.     Additionally, at the April 2, 2012, hearing, the respondent agreed to dismiss the conversion claim, as the conversion claim was for only $202.34.

"23.     According to B.R., the respondent did not discuss the possibility of dismissing the breach of contract or conversion claims. According to the respondent, he discussed dismissing the breach of contract claims without prejudice with B.R. The respondent acknowledged that he did not discuss dismissing the conversion claim with B.R.

"24.     Judge Fairchild directed counsel for Haase & Long, Inc. to prepare a journal entry, memorializing the dismissal. At the time of the respondent's suspension from the practice of law, the journal entry had not been filed and the respondent remained counsel of record. The respondent failed to inform B.R., opposing counsel, or the Court of his suspension. Additionally, the respondent failed to file a motion to withdraw from the representation.

"25.     B.R. learned that the respondent's license to practice law was suspended through local media. B.R. contacted the respondent, requesting that his file be returned to

6

him. B.R. went to the respondent's office and found the office to be vacant. The respondent failed to return B.R.'s file to him.

"DA11781

"26.     On March 5, 2012, the respondent filed an application for an insurance license. That same day, the Kansas Commissioner of Insurance issued Kansas Resident Insurance Producer License #16007094 to the respondent.

"27.     Question 2 on the application asks:

'2.     Have you ever been named or involved as a party in an administrative proceeding, including FINRA sanction or arbitration proceeding regarding any professional or occupational license or registration?

'"Involved" means having a license censured, suspended, revoked, canceled, terminated; or, being assessed a fine, a cease and desist order, a prohibition order, a compliance order, placed on probation, sanctioned or surrendering a license to resolve an administrative action. "Involved" also means being named as a party to an administrative or arbitration proceeding, which is related to a professional or occupational license, or registration. "Involved" also means having a license, or registration application denied or the act of withdrawing an application to avoid a denial. INCLUDE any business so named because of your actions, in your capacity as an owner, partner, officer or director, or member or manager of a Limited Liability Company. You may EXCLUDE terminations due solely to noncompliance with continuing education requirements or failure to pay a renewal fee.

7

'If you answer yes, you must attach to this application:

a)     a written statement identifying the type of
       license and explaining the circumstances of each
       incident,

b)     a copy of the Notice of Hearing or other
       document that states the charges and allegations,
       and

c)     a copy of the official document, which
       demonstrates the resolution of the charges or any
       final judgment.'

The respondent falsely answered this question 'no.' The respondent had previously been the subject of administrative proceedings regarding his license to practice law on four occasions.

"28.     First, on January 24, 2001, the disciplinary administrator informally admonished the respondent in DA7488. Next, on March 21, 2002, the disciplinary administrator informally admonished the respondent in DA8073. Then, on October 31, 2003, the Kansas Supreme Court issued an unpublished opinion censuring the respondent for having engaged in misconduct. Finally, at the time the respondent filed the insurance application, the case which resulted in the respondent's suspension was pending before the Kansas Supreme Court—the case was docketed on October 11, 2011, the respondent filed his brief on January 6, 2012, and oral arguments had been scheduled for April 16, 2012.

"29.     On June 18, 2012, the respondent wrote to the Kansas Commissioner of Insurance and informed the Commissioner that his license to practice law was suspended for a period of one year.

8

"30.    On September 17, 2012, the Kansas Commissioner of Insurance issued a Summary Order, revoking the respondent's insurance license.

'14.    The Commissioner finds that Respondent's license is revoked pursuant to K.S.A. 40-4909(a)(1) because Respondent provided incomplete and untrue information on his license application.

'15.    The Commissioner also finds that sufficient grounds exist for the revocation of Respondent's insurance agent license pursuant to K.S.A. 2011 Supp. 40-4909(a)(8) based on the findings of the Kansas Supreme Court in Case No. 106,793.

'16.    The Commissioner also finds that sufficient grounds exist for the revocation of the Respondent's insurance agent license pursuant to K.S.A. 2011 Supp. 40-4909(b) because "the interests of the insurer or the insurable interests of the public are not properly served under such license."'

"31.    On March 11, 2013, Susan Ellmaker, Staff Attorney with the Kansas Commissioner of Insurance, filed a disciplinary complaint against the respondent. On May 3, 2013, the respondent provided a written response to Ms. Ellmaker's complaint. The respondent's response provided as follows:

'This is a response to the complaint authored by Susan Ellmaker. The complaint is correct, that I submitted an application that was in error. This error was not intended to conceal the pending disciplinary proceeding. I understand explanations are frowned upon. As such, I will not be giving one. Upon suspension I notified the Insurance authorities. But let's be clear, on substance, the disciplinary proceeding was not disclosed as defined by question 2.

'Further, little of the facts identified with Purcell is factual. I did not lose my Insurance license in October of 2012. Upon notification that

9

my license may be suspended, I appealed. As a result, my license stayed in effect. Moreover, I was not terminated from my employ at Purcell's in October 2012. I told her that I did not want to continue to sale [*sic*] insurance under the circumstances. However, I remained employed with Purcell until January of 2013 serving in a different capacity. Finally, any contention that I forwarded an authorized letter to the Insurance authorities is false. I wrote the letter and Purcell signed it.'

"*Conclusions of Law*

"32.     Based upon the partial stipulation and the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.2, KRPC 1.4, KRPC 1.16, KRPC 8.4(c), KRPC 8.4(d), Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218, as detailed below.

"KRPC 1.2(a)

"33.     Lawyers are bound by their clients' decision concerning the representation. KRPC 1.2(a) provides the rule in this regard:

'A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.'

In this case, the respondent violated KRPC 1.2(a) when he dismissed B.R.'s case without authority. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.2(a).

10

## "KRPC 1.4

"34.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to keep M.G. and B.R. reasonably informed regarding the status of their cases. Thus, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.16

"35.     KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

> 'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he failed to return B.R.'s file. The hearing panel concludes that the respondent repeatedly violated KRPC 1.16(d).

## "KRPC 8.4(c)

"36.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he falsely answered question 2 on the insurance license application. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

11

"KRPC 8.4(d)

"37.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to inform M.G., the Court, and opposing counsel that his license to practice law was suspended and when he failed to file a motion to withdraw from M.G.'s case. Had the respondent taken appropriate action, the Court could have appointed new counsel for M.G. and the sentencing hearing scheduled for July 6, 2012, would not have had to be continued. Additionally, the respondent violated KRPC 8.4(d) when he failed to inform other clients, the Court, and opposing counsel that his license to practice law was suspended and when he failed to file motions to withdraw in the other pending cases. Finally, the respondent violated KRPC 8.4(d), when he failed to inform B.R., the Court, and opposing counsel that this license had been suspended and when he failed to file a motion to withdraw from his representation of B.R. The hearing panel, therefore, concludes that the respondent violated KRPC 8.4(d).

"Kan. Sup. Ct. R. 211(b)

"38.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

12

"39.    Upon suspension or disbarment, an attorney must take certain action. Kan. Sup. Ct. R. 218(a) provides the requirements in this regard:

'In the event any attorney licensed to practice law in Kansas shall hereafter be disbarred or suspended from the practice of law pursuant to these Rules, or shall voluntarily surrender his or her license, such attorney shall forthwith notify in writing each client or person represented by him or her in pending matters, of his or her inability to undertake further representation of such client after the effective date of such order, and shall also notify in writing such client to obtain other counsel in each such matter. As to clients involved in pending litigation or administrative proceedings, such attorney shall also notify in writing the appropriate court or administrative body, along with opposing counsel, of such inability to further proceed, and shall file an appropriate motion to withdraw as counsel of record.' [2012 Kan. Ct. R. Annot. 397.]

Upon suspension, the respondent was required to forthwith notify his clients, opposing counsel, and the courts, in writing, of his inability to continue the representation. Additionally, the respondent was also required to file motions to withdraw from cases where he was counsel of record. The respondent failed to notify his clients, opposing counsel, and the courts, in writing, of his inability to continue the representation. Also, the respondent failed to file appropriate motions to withdraw from the representations. Thus, the hearing panel concludes that the Respondent violated Kan. Sup. Ct. R. 218(a).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"40.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual

13

injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"41.     *Duty Violated*. The respondent violated his duty to his clients to provide reasonable communication. The respondent violated his duty to the public to maintain his personal integrity. The respondent violated his duty to the legal profession to refrain from interfering with the administration of justice.

"42.     *Mental State*. The respondent knowingly violated his duties.

"43.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to his clients and the legal profession.

"44.     *Aggravating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"45.     **Prior Disciplinary Offenses**. The respondent has been previously disciplined on four occasions. First, on January 24, 2001, in DA7488, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.5. Next, on March 21, 2002, in DA8073, the disciplinary administrator informally admonished the Respondent for having violated KRPC 1.16 and Kan. Sup. Ct. R. 207. Third, on October 31, 2003, the Kansas Supreme Court issued an unpublished opinion censuring the respondent for having violated KRPC 1.15, KRPC 1.16(d), and KRPC 5.5. Finally, on May 18, 2012, the Kansas Supreme Court issued an opinion suspending the respondent's license to practice law for a period of one year for having violated KRPC 1.7(a)(2), KRPC 5.5(a), KRPC 8.4(c), and Kan. Sup. Ct. R. 208.

"46.     Additionally, the respondent has previously been subject to five administrative suspensions. In 1989, the Respondent failed to pay the CLE fee and his license was suspended. In 1993, the Respondent failed to pay the CLE fee and his license was suspended. In 1995, the Respondent failed to complete the requisite CLE hours and

14

his license was suspended. In 2000, the Respondent failed to pay the attorney registration fee and his license was suspended. In 2001, the Respondent failed to pay the CLE fee and his license was suspended.

"47.    **Dishonest or Selfish Motive**. The respondent's misconduct in the case involving the Kansas Commissioner of Insurance was motivated by dishonesty and selfishness. He provide false information on this application for a license to sell insurance.

"48.    **A Pattern of Misconduct**. The respondent has engaged in a pattern of misconduct by repeatedly failing to comply with the rules of the Kansas Supreme Court.

"49.    **Multiple Offenses**. The respondent committed multiple rule violations. The respondent violated KRPC 1.2, KRPC 1.4, KRPC 1.16, KRPC 4.1, KRPC 8.4(c), KRPC 8.4(d), Kan. Sup. Ct. R. 211, and Kan. Sup. Ct. R. 218(a).

"50.    **Substantial Experience in the Practice of Law**. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1988. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

51.    *Mitigating Factors.* Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstance present:

"52.    **The Present Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions**. The respondent entered into a partial stipulation, admitting many of the facts and rule violations.

"53.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

15

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'5.11    Disbarment is generally appropriate when:

. . . .

(b)    a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious adversely reflects on the lawyer's fitness to practice.'

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

'8.1    Disbarment is generally appropriate when a lawyer:

(a)    intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential

16

injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

'8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation*

"54. The disciplinary administrator recommended that the respondent be suspended from the practice of law for an indefinite period of time. The disciplinary administrator further recommended that the effective date of the indefinite suspension not be made retroactive to the respondent's existing suspension. The respondent stated that he was comfortable with an indefinite suspension, however, he preferred a definite suspension.

"55. Given the respondent's disciplinary hearing and his 15 year indifference to courts and the administration of justice, the hearing panel considered recommending that the respondent be disbarred. However, it appears to the hearing panel that the respondent has begun a personal transformation from an attorney with a bad attitude and a disregard for the rules to an attorney with respect for the rules which govern our profession. Further, the respondent did not personally gain by his misconduct. Accordingly, based upon the partial stipulation, the findings of fact, the conclusions of law, the Standards listed above, and what the hearing panel perceives to be the seeds of a

17

personal and professional change, the hearing panel unanimously recommends that the respondent be indefinitely suspended from the practice of law.

"56. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent entered into a partial stipulation before the hearing panel, and he did not file exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

Moreover, we determine that the evidence before the hearing panel supported the panel's conclusions of law. Specifically, the clear and convincing evidence established that the respondent's misconduct violated KRPC 1.2(a) (2013 Kan. Ct. R. Annot. 459) (scope of representation); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 8.4(c) (2013 Kan. Ct. R.

18

Annot. 655) (engaging in conduct involving misrepresentation); 8.4(d) (engaging in conduct prejudicial to the administration of justice); Kansas Supreme Court Rule 211(b) (2013 Kan. Ct. R. Annot. 356) (failure to file answer in disciplinary proceeding); and Kansas Supreme Court Rule 218(a) (2013 Kan. Ct. R. Annot. 406) (notification of clients upon suspension).

Both the hearing panel and the Disciplinary Administrator's office ultimately recommended a sanction of indefinite suspension. "The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2013 Kan. Ct. R. Annot. 377).

Before making its final recommendation, the panel considered the sanction of disbarment. That consideration was appropriate, given that respondent has violated our rules of professional conduct multiple times over a period of many years, while also accumulating a number of suspensions for failing to comply with the administrative responsibilities required of every attorney. Accordingly, a minority of this court would disbar the respondent. But a majority of the court defers to the assessments of the panel and the Disciplinary Administrator's office that respondent's change in attitude warrants an indefinite suspension, in lieu of disbarment.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Brian R. Johnson be indefinitely suspended from the practice of law in the state of Kansas, effective the date of this order in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406), and in the event the respondent would seek reinstatement, he shall comply with the requirements of Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1] **REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,423 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.